PARIENTE, J., dissenting.
 

 It is undisputed that this is a terrible crime. But, without a full picture of Allen's upbringing and background, the jury could never have understood the full extent of the mitigation in her case, which could have caused at least one juror to recommend life. Because Allen's attorney's failure to properly investigate and present mitigation evidence-specifically the testimony of Allen's aunt, Barbara Capers, who could have given first-hand accounts of the abuse Allen suffered-constitutes deficient
 performance and the absence of important mitigation undermines confidence in the jury's unanimous recommendation for death, I dissent.
 

 Capers, who was available and willing to testify, would have presented a considerably more complete and detailed picture of Allen's horrific childhood and early adult life, including first-hand accounts and graphic details of the physical and sexual abuse Allen suffered at the hands of her family members and former boyfriends. The testimony would not have been cumulative to the testimony presented at trial. Rather, it would have been compelling based on Caper's first-hand knowledge of the events of Allen's life. However, Allen's attorney never so much as even contacted Capers, even though Capers was at all times available to testify. Thus, because Allen has established ineffective assistance of counsel, I conclude that Allen's sentence of death should be vacated, and this case should be remanded for a new penalty phase.
 

 BACKGROUND
 

 Approximately two and a half years before trial, Allen's case was reassigned from the public defender's office to defense counsel. Upon taking Allen's case, counsel failed to conduct an independent investigation into mitigation. Trial counsel only spoke with two mitigation witnesses before the trial-(1) Allen's aunt, Myrtle Hudson, and (2) Allen's sister, whose name he did not remember. He did not enlist the help of an investigator or mitigation specialist. At the postconviction evidentiary hearing, counsel testified that he thought the "witnesses were all lined up" before he took the case and it was just a matter of "putting [the mitigation] on."
 

 Had she been asked to testify, Allen's aunt, Barbara Capers, could have added the following testimony: that she personally witnessed Allen's mother physically abusing Allen by beating her with her hands and fists almost every day; Allen's mother would also beat Allen with belts, whip her with sticks, and slap her in the face; when Allen was twelve, her mother beat her so badly that Capers called the police; Allen's grandfather also physically abused Allen, he would line up the boys and girls naked, including Allen, and go down the row beating them with oak switches; Allen also witnessed her grandfather being abusive to her mother; in her twenties, Allen was beat up by her boyfriend, Bill Skane, and was unrecognizable when Capers visited her in the hospital; Capers witnessed Allen's paramour abuse her many times while she was pregnant, including one time he and another boy kicked and punched Allen in the stomach; when Allen was a young girl, her mother went to jail and Allen stayed with her grandfather, and Allen told Capers that she wanted to stay with her instead because he was sexually molesting her; Allen's uncle Roy also sexually molested her when he visited the grandfather every other weekend; Capers saw Roy touch and grab Allen in private places like her breasts and kiss her on the mouth; Allen told Capers that her brother and another man sexually molested her; Allen had a stroke as a teenager that affected her speech and her memory; and Allen demonstrated signs of severe anxiety.
 

 ANALYSIS
 

 As the majority explains, to be entitled to relief on her claim of ineffective assistance of counsel, Allen must satisfy both prongs of the
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984), analysis-(1) that counsel was deficient and (2) as a result of counsel's deficiency, confidence in the outcome of the trial is undermined.
 

 1. Deficiency
 

 Although Capers' testimony would have involved the same subject as evidence presented at trial, it is not merely cumulative-as the majority and postconviction court suggest. It is impossible to conclude that Capers' testimony would have been similar in breadth and detail to Hudson's. Rather, Capers' testimony was more detailed and included many personal, eyewitness accounts to the abuse Allen suffered. Certainly, hearing first-hand accounts of the abuse suffered by Allen would be far more impactful on the jury than Hudson's vague recollection of Allen's childhood.
 

 Further, Allen's childhood and history of abuse were the most significant mitigation the defense presented during the penalty phase.
 
 See
 
 per curiam op. at 5-6, note 2. While Hudson's testimony was a critical component of the mitigation presented because it could help the jury understand why Allen committed this heinous crime, Capers' testimony would have undoubtedly painted an even clearer picture for the jury of this mitigation, as explained above.
 

 Thus, trial counsel's investigation was wholly insufficient and "fell short of the standards for capital defense work articulated by the American Bar Association (ABA)-standards to which [the United States Supreme Court] long have referred as 'guides to determining what is reasonable,' " which provide that efforts must be made to discover all reasonably available mitigation and evidence to rebut aggravators.
 
 Wiggins v. Smith
 
 ,
 
 539 U.S. 510
 
 , 524,
 
 123 S.Ct. 2527
 
 ,
 
 156 L.Ed.2d 471
 
 (2003) ;
 
 see
 
 Am. Bar Ass'n,
 
 Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 10.11
 
 (rev. ed. 2003). Accordingly, I would conclude that Allen has satisfied the first prong of the
 
 Strickland
 
 analysis.
 

 2. Prejudice
 

 The postconviction court concluded that Allen failed to establish prejudice because, with the "significant aggravators found and the comparatively weak mitigation found, it is unlikely that the additional mitigation presented would have been sufficient to outweigh the established aggravation." Postconviction Ct. Order at 76. Further, the majority asserts that Allen "overemphasizes the value of evidentiary hearing testimony presented by Allen's family members," specifically that the "testimony presented regarding Allen's background was cumulative to the mitigation already presented at trial." Per curiam op. at 1273-74. The majority concludes that Allen could not have suffered prejudice because of the mitigation already presented in this case and the strong aggravation that was presented, which they argue is evidenced by the unanimous jury verdict.
 

 Id.
 

 However, the majority fails to take into consideration the effect of
 
 Hurst
 

 [5]
 
 on the analysis. As this Court explained in
 
 Bevel v. State
 
 ,
 
 221 So.3d 1168
 
 (Fla. 2017), the question of prejudice was significantly altered by this Court's opinion in
 
 Hurst
 
 :
 

 Thus, this Court unquestionably focuses on the effect the unpresented mitigation could have had on the jury's ultimate recommendation. For instance, in
 
 Hurst v. State
 
 ,
 
 18 So.3d 975
 
 (Fla. 2009), in addressing whether there was deficient performance and prejudice, we reasoned that "[b]ecause this mitigation
 was not made available for the jury or the trial judge to consider before the death sentence was imposed, our confidence in the imposition of the death penalty in this case is undermined."
 

 Id.
 

 at 1015
 
 . After our more recent decision in
 
 Hurst
 
 , where we determined that a reliable penalty phase proceeding requires that "the penalty phase jury must be unanimous in making the critical findings and recommendation that are necessary before a sentence of death may be considered by the judge or imposed,"
 
 202 So.3d at 59
 
 , we must consider whether the unpresented mitigation evidence would have swayed one juror to make "a critical difference."
 
 Phillips
 
 [
 
 v. State
 
 ], 608 So.2d [778,] 783 [ (Fla. 1992) ].
 

 221 So.3d at 1182.
 

 Hudson testified at the postconviction evidentiary hearing that she told counsel about Capers and her willingness to testify in Allen's case. Further, Capers testified at the postconviction evidentiary hearing that she was contacted by an attorney-not Allen's trial counsel-before trial, was available to speak with an expert, and wanted to testify, but was not asked to do so. Rather than looking into Capers' testimony, trial counsel relied solely on Hudson's testimony for information regarding Allen's childhood and adult life. In fact, Capers wanted to help Allen but was never told that her testimony could help; she was even present in the courtroom for the duration of the trial.
 

 Clearly, as explained above, Capers' testimony would have better illustrated for the jury the trauma in Allen's childhood, development, and surroundings as an adult. Indeed, counsel conceded that it would have been beneficial to find witnesses to substantiate Allen's violent family life.
 
 See
 

 Walker v. State
 
 ,
 
 88 So.3d 128
 
 , 140 (Fla. 2012). Further, the additional "insight into [Allen's] childhood and young adulthood" that Capers could have provided would have "serv[ed] to humanize [her] to the jury" and could have persuaded jurors to be more sympathetic and merciful.
 

 Id.
 

 at 140-41
 
 . Thus, I conclude that prejudice has been established because our confidence in the unanimous jury verdict should be undermined.
 

 CONCLUSION
 

 It is clear that Capers' testimony would have provided the jury with a more complete and accurate picture of the powerful mitigation in Allen's case. However, because of the failure of Allen's attorney to investigate and present this mitigation evidence, the jury only received a partial understanding of the abuse Allen suffered as a child and into her adult life. This half-truth undoubtedly undermines our confidence in Allen's sentence of death. Thus, I would vacate Allen's sentence of death and remand for a new penalty phase.
 

 Accordingly, I dissent.
 

 Hurst v. State
 
 (
 
 Hurst
 
 ),
 
 202 So.3d 40
 
 (Fla. 2016),
 
 cert. denied
 
 , --- U.S. ----,
 
 137 S.Ct. 2161
 
 ,
 
 198 L.Ed.2d 246
 
 (2017) ;
 
 see
 

 Hurst v. Florida
 
 , --- U.S. ----,
 
 136 S.Ct. 616
 
 ,
 
 193 L.Ed.2d 504
 
 (2016).
 
 Hurst
 
 applies retroactively to Allen's sentence of death, which did not become final until 2014.
 
 Allen v. State
 
 ,
 
 137 So.3d 946
 
 (Fla. 2013),
 
 cert. denied
 
 , --- U.S. ----,
 
 135 S.Ct. 362
 
 ,
 
 190 L.Ed.2d 260
 
 (2014).